FRANK W. CLARK AND ANN CLARK v. HIRAM N. LEE.

*Fraudulent sale—Change of possession—Burden of proof—Charge to jury—Consideration illegal in part.*

1. The burden of proof is upon the vendee to make it appear that the sale was made in good faith and without any intent to defraud the creditors of the vendor, where such sale is not followed by an actual and continued change of possession, and a refusal to so instruct the jury is error. *Buhl Iron Works v. Teuton*, 67 Mich. 623.

2. In replevin by a vendee to recover a stock of goods seized at the suit of the vendor's creditors, the plaintiff relied upon his bill of sale as evidence of his title, the consideration for which he claimed was two chattel mortgages held by him on the property. The creditors claimed that one of the mortgages was given without any valuable consideration, and that the other was increased in amount, all with intent to defraud them, and with the knowledge of the vendee; and it is held a question for the jury, and, if found in favor of the creditors, the fraud tainted the whole transaction, and prevented a recovery by the plaintiff.

Error to Ionia. (Smith, J.) Argued October 15, 1889. Decided December 28, 1889.

Replevin. Defendant brings error. Reversed. The facts are stated in the opinion.

*Mitchel & McGarry*, for appellant, contended:

1. Where a general verdict has been rendered upon a charge embracing an unsound theory, and where it is uncertain whether the error did or did not effect the result, the judgment must be reversed; citing *Warner v. Beebe*, 47 Mich. 435; and this result must also follow where the charge is vague and misleading, so that it cannot be told that there was a fair trial; citing *Loring v. Frue*, 104 U. S. 223.

2. The statute upon which the defendant relies makes a conveyance made with intent to defraud creditors void; citing How. Stat. chap. 234; and was designed solely to protect the rights of the creditors, and is silent upon the rights of the parties to the transaction itself.

3. Entire honesty and good faith are necessary to render an instrument valid, and whenever it appears, as in the present case, that part of its object was to defraud creditors, the whole instrument is in judgment of law void; citing *Russell v. Winne*, 37 N. Y. 591; *Goodhue v. Berrien*, 2 Sand. Ch. 630; *Shurtleff v. Willard*, 19 Pick. 202; *Chase v. Walker*, 26 Me. 555; *Barnet v. Fergus*, 51 Ill. 352; *Allen v. Brown*, 43 Ga. 305.

4. If a part of a consideration for a transfer is merely a nominal or colorable consideration, contrived to hinder, delay, or defraud creditors, the whole transfer is void; citing *Floyd v. Goodwin*, 8 Yerg. 484; *Burke v. Murphy*, 27 Miss. 167; *McKenty v. Gladwin*, 10 Cal. 222; *Mead v. Combs*, 4 C. E. Green, 112; *Albee v. Webster*, 16 N. H. 362; and if any part of an assign-

ment be contrary to the statute for the protection of creditors against fraudulent transfers, the whole is void; citing *Goodrich v. Downs*, 6 Hill, 438; and illegality of consideration is a complete defense to the entire contract, though the consideration be in part valid; citing *Snyder v. Willey*, 33 Mich. 484.

5. A grantee who voluntarily becomes a party to a deed which is fraudulent in part forfeits his right to claim benefit from another part which would have been good; citing *Kirby v. Ingersoll*, Har. Ch. 172.

*Davis & Nichols*, for plaintiffs, contended

1. No complaint can be successfully maintained that the language used by the circuit judge (see opinion, p. 230) is not law, unless the facts, as found by the jury or conceded by the parties, show without question that the law as given cannot be applied to the facts of this particular case; citing *Pogodzinski v. Kruger*, 44 Mich. 79; *Campau v. Lafferty*, 50 Id. 114; *Dayton v. Monroe*, 47 Id. 193; *Brown v. Dean*, 52 Id. 267.

2. The language used being correct as an abstract proposition, it is essential to turn to the facts as established by the verdict, to ascertain if the court was in error in giving the instruction complained of, and if he should have instructed the jury that the burden of proof was on the plaintiffs, and that, by virtue of the statute, a presumption of fraud was raised, which they were obliged to overcome and explain away. The court gave the defendant's first and second requests in full, bearing upon this question, thus fairly placing before the jury the object and purpose of the statute. He then proceeded in the language of this Court to explain what change of possession was necessary; citing *Doyle v. Stevens*, 4 Mich. 93; *Sheldon v. Warner*, 26 Id. 403; *Cooper v. Brock*, 41 Id. 491; *Webster v. Bailey*, 40 Id. 641; *Carpenter v. Graham*, 42 Id. 191; and the question as to whether there was the change of possession contemplated was then very properly left to the jury, who found in the affirmative, and, thereupon, the charge complained of was correct, and applicable to this case.

3. The instructions given to the effect that the plaintiffs could recover if there was a *bona fide* debt, and a scheme or conspiracy did not exist, and the goods received did not exceed such debt,—and generally upon this phase of the case,—were a fair, full, and complete exposition of the law upon this branch of the case; citing *Andrews v. Fillmore*, 46 Mich. 315; *Bank v. Chapelle*, 40 Id. 447; *People v. Bristol*, 35 Id. 28; *Adams v. Niemann*, 46 Id. 135; *Nichols v. Bancroft*, 74 Id. 191.

LONG, J.   The defendant is the sheriff of Ionia county, and held the stock of goods in controversy in this cause under several writs of attachments and executions on judgments rendered in the circuit court for said county in favor of Edson, Moore & Co., W. D. Robinson & Co., and Olney, Shields & Co. against one Clarence E. Monroe. The plaintiffs, claiming to be the owners of the stock, brought replevin against the sheriff, and took the same into their possession under the writ, and on the trial of the cause had judgment.

On the trial of the cause, Frank W. Clark, one of the plaintiffs, was called as a witness for the plaintiffs, and testified that Ann Clark was his wife, and that the plaintiffs were doing business at Odessa, Ionia county, in the firm name of Frank W. Clark & Co.; that they were in possession of the stock of goods on November 9, 1886, and had been since October 19, previous; and that on November 9, 1886, the goods in question were taken from the possession of the plaintiffs by the sheriff, under such attachments and executions; that plaintiffs came into possession of the goods by bill of sale from Clarence E. Monroe, who had been in possession of them for some time previous.   It was admitted that demand was made before suit was commenced, and that the damage for detention was six dollars.   Plaintiffs here rested.

It was claimed on the part of defendant, and testimony was given tending to show the fact, that on April 29, 1886, Clarence E. Monroe, a young man, 23 years of age, and one Jotham Rickertson, a former clerk of Frank W. Clark, one of the plaintiffs in this case, formed a copartnership under the firm name of Monroe & Rickertson, and purchased from Clark, Russell & Co., doing business at Bonanza, Ionia county, composed of Frank W. and Ann Clark, plaintiffs herein, and James W. Russell,

a stock of dry goods and groceries, for the sum of $800. Neither Monroe nor Rickertson put any money into the business. Payment was made by notes,—one for $400, payable six months from purchase, and four $100 notes, due one, two, three, and four years from that date, with interest at 7 per cent. Monroe assigned, as collateral security to these notes, an interest in a real-estate mortgage held by him on property in Rhode Island. About two weeks after this, Monroe & Rickertson bought of Frank W. Clark & Co., a firm composed of the plaintiffs in this case, a stock of boots and shoes, and, in payment therefor, gave a due-bill, without any security, for the sum of $605. The goods under each purchase were inventoried, and purchased, as it is claimed, under the inventory. After the purchase, Frank W. Clark wrote to different wholesale firms in regard to the standing of Monroe & Rickertson. Among others, he wrote to Edson, Moore & Co , one of the plaintiffs in the attachment suits, as follows:

"We have sold our stock to Monroe & Rickertson, who will conduct the business at the old stand. They will continue to buy their goods of you, and will be able to keep up their bills, as they have the stock clear, and money coming to them besides."

This letter was written May 6, 1886. These stocks of goods were in the store building of the plaintiff, and a verbal agreement was made between Frank W. Clark and Monroe & Rickertson for the renting of this building at $100 per year, and, as plaintiffs claim, for the period of four years, or until the last of the $100 notes became due. The business was carried on by Monroe & Rickertson in this shape until September 16 of that year, when Monroe took a re-assignment of the real-estate mortgage on the Rhode Island property, and went to Providence for the purpose of negotiating it. At the same time the firm of

Monroe & Rickertson executed a chattel mortgage on the stock of goods purchased, for $1,600, to James W. Russell, to secure the firm of Clark, Russell & Co. It is claimed by defendant that up to this time $21 had been paid on the purchase, and that only $1,400 was then owing by Monroe & Rickertson; that they owed nothing but what was represented by the notes and due-bill. The chattel mortgage was drawn by Frank W. Clark; and Monroe testifies that the additional $200 was put in by Clark for the purpose of swelling the mortgage up to the value of the stock, to keep creditors away. Two weeks afterwards Monroe returned from Providence without any money, and appealed to Clark, as he testifies, to know what he should do, when Clark told him to continue on in the business, and to get Rickertson out, as he would not do as Clark wanted him to. At the same time, Clark suggested filling up the store with stock, and, in reply to Monroe's inquiry as to what the creditors would do, Clark stated that the mortgage would cover the stock, and that an assignment could be made, if necessary. Under this arrangement, the stock was increased to $2,200, with goods bought of various parties, including Edson, Moore & Co. and Olney, Shields & Co., two of the plaintiffs in the attachment suits. Under the same arrangement, Monroe got Rickertson out of the firm, on payment to him of $50. This was accomplished by intimidating him by fear of prosecution for selling tobacco without a license, if he remained longer in Bonanza. On the day of the dissolution of the firm, October 13, 1886, under the advice of Clark, as defendant claims, and to swell the amount of the indebtedness to keep off creditors, Monroe gave to plaintiffs in this case a further mortgage of $600 upon the stock. The alleged consideration of this mortgage was $200 "conscience money," claimed to have been mistakes in the inventories of the stocks of goods purchased by

Monroe & Rickertson, and $400 for rent due and to become due for a balance of the term of four years, by the parol agreement. The figures on this "conscience money" were made by Clark, as Monroe testifies, without any agreement on his part, and that the amount left out of the inventory, and of which Clark was advised, was not more than $5; and at the time of the making of the mortgage Clark said he would call the balance "$400 rent." Monroe says that at this time Clark did not claim that he owed him more than the $800 and the $600 on the two purchases.

On October 19, 1886, plaintiffs bought Russell's interest in the $1,600 mortgage, and took an assignment; plaintiffs thus becoming the sole mortgage creditors of Monroe. On the same day they took from Monroe a bill of sale of the stock of goods and book-accounts for the alleged consideration of $2,200, the amount of the two mortgages. It is also claimed by defendant, and testified to by Monroe, that in buying goods, executing mortgages, notes, and bills of sale, Monroe followed the advice of Frank W. Clark; that the amount of goods bought by Monroe & Rickertson of outside parties up to the time of the execution of the bill of sale was $2,500, and the amount paid on these bills was from $1,200 to $1,500; that in the whole transaction Monroe received but $75, and Rickertson but $50; that the value of the stock at the time was $2,500. It is admitted that the bill of sale was not filed, and it is claimed by defendant that there was no visible change in the business after the execution of the bill of sale; Monroe remaining in charge and conducting the business as theretofore from the time of the execution of the bill of sale to the time of the levies under the writs, and taking possession by defendant.

The foregoing is the theory and claim of defendant,

and is substantially what Monroe testified to. His testimony was corroborated in many particulars by that of Rickertson. Defendant also gave testimony showing that Monroe appeared to be in possession there of the stock after the bill of sale was executed, and the business going on as usual under him, and that there appeared to be $2,500 worth of goods in the store at that time.

The execution of the mortgages and bill of sale at the time stated is not disputed by the plaintiffs. Their theory is that the sale of the two stocks of goods to Monroe & Rickertson was made in good faith, and under an inventory taken by them, which was reported to be at $800 and $605, and for which amount the notes and due-bill were taken; that subsequently Monroe confessed that some $200 of the goods had been left out of the inventory, and which amount was added to the $400 rent, making up the $600 mortgage; that, at the time of the making of the bill of sale, Monroe was actually indebted to them in the sum of the two mortgages, $2,200, which was a *bona fide* debt. Frank W. Clark denies positively that these mortgages or the bill were given to cheat, hinder, delay, or defraud creditors, or that Monroe was acting under his advice in purchasing goods to swell the stock, or that the second mortgage was given to swell the indebtedness, to keep off creditors. Plaintiffs, also claim that the $400 for the four years' rent was an indebtedness, though under the verbal arrangement, which Monroe had a right to secure. It is also claimed by plaintiffs that they went into actual possession of the goods on the making and delivery of the bill of sale, and that they were in possession at the time the goods were seized under the attachments. On this question Mr. Clark testified, however, that Mr. Monroe had charge of the stock from the time of the bill of sale to the time the attachment was put on. Mr. Stowe, who acted for Mr. Clark, as his

attorney, in settling up with Monroe and taking the bill of sale, also testified:

"I did not notice any change in the appearance of the institution after the bill of sale was made."

Mr. Monroe was then in the store, clerking, or acting as the agent of Clark in the business. Mr. Elliot, the agent of Edson, Moore & Co., when he went there, found Monroe in the store, and the business apparently continuing, as he says, as it did before. Plaintiffs also gave evidence, by one of the appraisers in the replevin case, that the inventory and appraisal so made showed the value of the goods to be only $1,124.

The theories of the respective parties were submitted by the court to the jury for their consideration.

Several errors are assigned, but counsel for defendant, in their brief, grouped them under two heads:

"1. Those relating to the rulings and charge of the court concerning the merits of the controversy.

"2. Those relating to the charge of the court concerning the burden of proof."

Under the second head, counsel asked the court to charge the jury:

"1. Our statute provides that every conveyance, in writing or otherwise, of any goods, made with the intent to hinder, delay, or defraud the creditors of their lawful suits, damages, debts, or demands, as against the creditors, or any of them, so hindered, delayed, or defrauded, shall be void.

"2. Our statute further provides that every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods by way of mortgage or security, or upon any conditions whatever, unless the same shall be accompanied by an immediate delivery, and be followed by an actual and continued change of possession, of the things sold, mortgaged, or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, and shall be con-

clusive evidence of fraud, unless it shall be made to appear on the part of the person claiming under such sale or assignment that the same was made in good faith, and without any intent to defraud such creditors.

"3. The change of possession contemplated by this section of the statute is an open, visible, substantial change, and must be such as to give the public notice that there has been a change in the ownership. Therefore, if the jury find that the pretended sale from Monroe to the plaintiffs was not accompanied by immediate delivery, and followed by an actual, open, visible, substantial, and continued change of possession, said sale is presumed to be fraudulent and void as against the creditors of said Monroe, and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the plaintiffs that such sale was made in good faith, and without any intent to defraud such creditors."

The court gave the first and second of these requests, and added:

"Now, gentlemen, that is, in substance, that where the party transfers goods, and there is no change of possession, unless the same shall be accompanied by an immediate delivery, and to be followed by an actual and continued change of possession,—if that does not occur, stopping right there, the law raises a presumption of fraud, and, without any evidence, it must be held conclusively to be fraudulent. But, after the evidence is introduced as to the transaction, then it is for the jury to say, in view of all the testimony, whether that presumption is removed or not. As to what kind of a possession should occur to remove that presumption, our own Court uses this language: 'The change of possession contemplated is an open, visible, and substantial change, and must be such a change as to give notice to the public that there has been a change in the ownership.' If that occurs, then this presumption is removed,—then it is to say whether it is fraudulent or not."

In view of other portions of the charge, the court should have given the defendant's request as asked. It stated the law correctly, and connected Monroe and plaintiffs directly with the subject then being discussed, that Monroe must surrender possession, and Clark must take

such actual, open, and visible possession, and that the same must be continued, or the same would be presumed to be fraudulent, and would be conclusive evidence of fraud, unless the plaintiffs should make it appear that the sale was made in good faith. Under the charge as asked, if the jury found there was no such open, visible, and continued change of possession, the burden was then cast upon the plaintiffs to show the *bona fides* of the transaction. Under the charge as given, following the second request to charge, the court entirely omitted this essential element, but left it to the jury to say, in view of all the testimony, whether the presumption was removed, and without any instructions as to where the burden of showing it rested.

Taking this instruction in connection with other portions of the charge as to the burden of proof, it may well be said that the jury might have been misled, as the court, in several portions of its charge, referring to the claim made by the defendant that the mortgages were fraudulent, and that the plaintiffs and Monroe had entered into a conspiracy to defraud the creditors of Monroe, had very properly directed the jury that the burden of showing this was upon the defendant.

Under the first proposition, it is claimed that the plaintiffs could not recover for two reasons:

"1. Because the proofs showed that the plaintiffs entered into a scheme with Monroe that Monroe should go on and purchase goods, fill up the store, not pay for the goods purchased in doing so, and then turn the stock over to Clark, and thus cheat the different parties from whom the purchases were made.

"2. Because the alleged indebtedness from Monroe to plaintiffs was fraudulently increased, by fictitious and improper charges, so as to make the apparent amount of the indebtedness equal the value of the goods in stock, in order to prevent the creditors of Monroe from realizing from that portion of the stock which exceeded the *bona fide* indebtedness to the plaintiff."

It is claimed that the court adopted the first of these reasons, and charged the jury in effect as requested, but entirely discarded the other, and charged the jury that, if the amount of the goods received by the plaintiffs did not exceed the *bona fide* indebtedness, then the plaintiffs must recover.  By the defendant's seventh request the court was asked to charge:

"The plaintiffs in this case rely upon their bill of sale from Monroe to them as the evidence of their title.  If any part of the consideration of the said bill of sale was fraudulent and void, it would taint the whole transfer, and render said instrument entirely void, and the plaintiffs could not recover."

This request was refused, and the court charged upon that question as follows:

"So that, if the fraudulent intent existed in the mind of Monroe to swell the amount of this intebtedness above the actual amount, but still only enough goods were transferred to pay an actual and existing debt, it seems to me that, under the law in this case, that would be a fraud in intent and not in fact, because he would only be getting pay for an actual debt, and they [the plaintiffs] would be entitled to recover."

Under the testimony that had been given upon the part of the defendant, defendant's seventh request should have been given.  The plaintiffs claimed the whole dealings to have been in good faith, and the consideration of the bill of sale, expressed as $2,200, to have been fully paid by the mortgages, and that the mortgages represented actual and *bona fide* claims due from Monroe & Rickertson.  The claim of the defendant is that the only valid indebtedness for which these mortgages were given was two stocks of goods,—one for $800, and the other for $600,—and that the last or $600 mortgage was made for the purpose of defrauding creditors, and that the whole scheme was concocted and carried forward by Frank W. Clark. If the testimony of Monroe and Rickertson is to be

believed, this is true. Clark contends that the $1,600 mortgage was made up of $62 interest on notes and due-bill, $90 money collected by Monroe & Rickertson for Clark, Russell & Co., $50 for use of team and wagon, and the value of the two stocks of goods,—one at $800 and the other at $600,—while the $600 mortgage was made up of the $400 item of four years' rent of store, though less than one year had expired, and Monroe was about to go out of business, if his testimony is true, and the $200 of false inventory, or, as it is called, "conscience money," though Monroe testifies that that amount was never agreed upon, and the discrepancy was only about $5. It was a question of fact for the jury whether this mortgage was increased to $1,600, and the $600 mortgage fraudulently given, to hinder, delay, or defraud the creditors of Monroe; and, if they found that Clark entered into this scheme with Monroe, as Monroe testifies he did, and the bill of sale was taken by Clark for the purpose of carrying out the scheme, such fraud would taint the whole transaction, so that no claim could be made by Clark under the bill of sale, and he could not recover.

What rights the plaintiffs may have for the amount honestly and actually due them on the chattel mortgages need not be determined here. If it is found that the title did not pass to the plaintiffs under the bill of sale, so as to affect the rights of the creditors of Monroe to take possession of the goods under their writs, the fact that the plaintiffs had rights under the mortgages would not debar the attaching creditors from taking possession, and bringing the goods to sale, subject to such valid claims as the plaintiffs might have.

For the errors pointed out the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.